AO 91 (Rev. 5/85) Criminal Complaint



# UNITED STATES DISTRICT COURT

DISTRICT OF _____ TENNESSEE

**FILED**

2005 MAY 17 P 4:28

U.S. DISTRICT COURT
EASTERN DIST. TENN.
_____ DEPT. CLERK

UNITED STATES OF AMERICA

V.

DANIEL JAMES SCHERTZ

**CRIMINAL COMPLAINT**

1:05-mJ-198

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about April 1, 2005, in Marion County, in the Eastern District of Tennessee defendant(s) did,

    (1) knowingly possess in and affecting commerce, a firearm and ammunition while being subject to a court order that–(A) was issued after a hearing of which such person received actual notice; and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner or such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear ir bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;
    (2) knowingly transfer explosive materials, knowing or having reasonable cause to believe that such explosive materials would be used to commit a crime of violence;
    (3) teach or demonstrate to any person the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means, information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, knowing that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence;
    (4) knowingly possess a firearm (destructive device) which was not registered to him in the National Firearms Registration and Transfer Record;
    (5) knowingly and unlawfully transfer a firearm in violation of the provisions of Chapter 53 of Title 26, United States Code.
    (6) knowingly make a firearm device in violation of the provisions of Chapter 53 of Title 26, United States Code.

in violation of Title __18__ United States Code, Sections __922(q)(8); 844(o), 842(p)(2)(B)__ and

Title 26, United States Code, Sections __5861(d), (e) and (f)__

I further state that I am a(n) __Special Agent, ATF__ and that this complaint is based on the

following facts:        Official Title

**See attached Affidavit**

Continued on the attached sheet and made a part hereof: [x] Yes  [ ] No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__May 17, 2005__      at      __Chattanooga, TN__
Date                                                     City and State

__Susan K. Lee__
Name & Title of Judicial Officer      Signature of Judicial Officer

## AFFIDAVIT

1. I, Lorin G. Coppock, being duly sworn, depose and state that I am a Special Agent with the United States Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since June 1998. Prior to my service with ATF, I was employed as a United States Border Patrol Agent for approximately 2 years and was employed prior to that as a Deputy Sheriff with the Camden County, Georgia Sheriff's Department for approximately 2 years.

2. I am a graduate of the Criminal Investigators Training Program and the ATF New Professional Training Course at the Federal Law Enforcement Training Center. Further I am an ATF Certified Explosives Specialist and have received specific training in the safe handling, identification and use of explosives. During the course of my employment as an ATF Special Agent, I have conducted numerous investigations involving the illegal use of firearms and explosives. As a result of my training and experience as an ATF Special Agent, I am familiar with the Federal Criminal laws and know that it is a violation of:

- 18 U.S.C. § 922(g)(8) for a person who is subject to a court order that–(A) was issued after a hearing of which such person received actual notice; and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner or such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear ir bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

- 18 U.S.C. § 844(o) for a person to knowingly transfer any explosive materials, knowing or having reasonable cause to believe that such explosive materials will be used to commit a crime of violence (as defined in section 924(c)(3) or drug trafficking crime (as defined in section 924(c)(2)).

- 18 U.S.C. § 842(p)(2)(B) to teach or demonstrate to any person the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means, information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, knowing that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence.

- 26 U.S.C. § 5861(d) to knowingly possess a firearm[1] which was not registered to him in the National Firearms Registration and Transfer Record.

---

[1] A "firearm" is defined, among other things, as a destructive device. Title 18, United States Code, Section 5845(a)(8).

- 26 U.S.C. § 5861(e) to knowingly and unlawfully transfer a firearm in violation of the provisions of this chapter.

- 26 U.S.C. § 5861(f) to knowingly make a firearm device in violation of the provisions of this chapter.

3. The information contained in this affidavit has been obtained by your affiant through personal observation and investigation, information related to your affiant by fellow law enforcement officers and witness/informant statements.

4. Between October 2004 and April 1, 2005, investigators of the Bureau of Alcohol, Tobacco, Firearms and Explosives, utilizing a Confidential Informant and an ATF Special Agent acting in an undercover capacity, conducted an undercover investigation of Daniel James Schertz for firearms and explosives violations involved in Schertz's participation with the Ku Klux Klan.

5. On or about April 1, 2005, in the Eastern District of Tennessee, a ATF Special Agent Mike Connors, acting in an undercover capacity (SA Connors), working with a Confidential Informant (CI) purchased five pipe bombs from Daniel Schertz for $750 in U.S. currency. The transaction occurred at Schertz's residence, located at or near 245 Beene Cemetery Road, South Pittsburg, in Marion County, Tennessee. SA Connors and the CI arrived at the residence and walked to a shed on the premises where Schertz was standing. SA Connors observed two partially completed pipe bombs lying on a workbench in the rear of the shed. Schertz was wearing rubber gloves and appeared to have been working on the pipe bombs when SA Connors and the CI arrived. Schertz picked up a black container of gun powder to show SA Connors and the CI and said that it was more powerful than the last stuff he used. SA Connors also observed various components used to make pipe bombs lying around the shed, including spark plugs, spark plug wires, gun powder, packages of screws, and several more pipes still wrapped in plastic.

6. Schertz told SA Connors and the CI that he needed five more end caps for completion of the pipe bombs. SA Connors observed five end caps with holes drilled in them sitting on the workbench. Schertz said they had to go to Lowe's to purchase the additional five end caps and some silicone to seal the pipe bombs.

7. At the direction of Schertz, SA Connors, the CI and Schertz got into SA Connors' vehicle and drove to Lowe's. While in the vehicle Schertz began talking about acquiring firearms and firearm accessories. Schertz reached to his right side and ejected the magazine from his pistol. Schertz handed the magazine to SA Connors, stating "these will go right through a vest." The magazine Schertz handed SA Connors was full of ammunition containing white Teflon tips. The ammunition was manufactured outside the state of Tennessee and had previously been shipped in interstate commerce. The firearm possessed by Schertz was identified by the CI as a Ruger semi-auomatic pistol, a firearm which was manufactured outside the state of Tennessee and had previously been shipped in interstate commerce.

8. Schertz, the CI and SA Connors discussed what the pipe bombs were going to be used for and SA Connors and the CI explained that they were planning to blow up a bus transporting Hispanic migrant workers to their place of employment. Schertz gave SA Connors advice on using the pipe bombs to blow up the bus and commented several times that he would like to help the CI "take care of" another specific group of Hispanic immigrants.

9. Once at Lowe's, Schertz picked out five end caps and some silicone for the pipe bombs he was making. Schertz took SA Connors and the CI to an aisle in the store containing electrical wire. Schertz told SA Connors and the CI to buy solid core 12-gauge copper wire to run from one pipe bomb placed on the engine coil of the vehicle to a second one placed at the fuel tank. Schertz explained how to use the 12-gauge wire as an extension from one pipe bomb to another. Schertz then purchased the end caps and silicone.

10. Schertz, SA Connors, and the CI returned to the shed at Schertz's residence where Schertz completed the pipe bombs while explaining the process to SA Connors and the CI. Schertz said he was not going to put "the guts" in the pipe bombs unless SA Connors and the CI wanted him to because of the distance they had to drive. Schertz explained to SA Connors and the CI how to fill up the pipe bombs. Schertz said to layer them by first putting in gun powder, then spark plugs, then more gun powder, then screws, more gun powder, screws, and then filling the remaining 3 to 4 inches of the pipe with gun powder. Schertz said to seal the pipe bombs by putting silicone on the threads and then tightening both ends with a wrench. Schertz sealed one end of each of the five pipe bombs and threaded a spark plug wire through the holes he had drilled in each end cap. Schertz wrapped each of the pipe bombs in red shop rags and then placed the pipe bombs and the rest of the components in plastic bags. SA Connors and the CI placed the bags in Connors' vehicle.

11. SA Connors and the CI went into Schertz's residence and met with him in the kitchen. The CI counted out $750 in U.S. currency and paid Schertz for the five pipe bombs. SA Connors and the CI left Schertz's residence and drove to a pre-arranged location to transfer the pipe bombs and components to affiant. All of the conversations that occurred on April 1, 2005, were electronically monitored and recorded with both audio and video surveillance equipment.

12. The pipe bombs were submitted to the ATF Science Laboratory for chemical analysis. The powder substances contained in the pipe bombs were determined to be black powder explosives and Hodgdon Triple Seven, a commercial black powder explosive substitute. These powders are explosives as defined in Title 18, United States Code, Section 844(j).

13. The pipe bombs were then submitted to the ATF Explosives Technology Branch for examination. The ATF Explosives Technology Branch has determined that the pipe bombs are destructive devices as defined in Title 18, United States Code, Section 921(a)(4) and Title 26, United States Code, Section 5845(f).

14. On January 26, 2005, Schertz's ex-wife, Shauna Schertz, obtained a protective order from the General Sessions Court of Marion County, Tennessee, Docket No. CV-13710, enjoining Daniel Schertz from "coming about Plaintiff at any time or place or for any purpose and specifically from abusing, threatening to abuse, or committing any acts of violence toward Plaintiff."

15. On May 17, 2005, affiant contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives National Firearms Act (NFA) Branch who conducted a search of the National Firearms Registration and Transfer Record regarding any NFA weapons registered to Schertz. The search was negative.

16. Based upon the foregoing, affiant submits there is probable cause to arrest defendant Daniel James Schertz for the following:

- Title 18, United States Code, Section 922(g)(8): for knowingly possessing in and affecting interstate commerce, a firearm while being a person who is subject to a protective order.

- Title 18, United States Code, Section 844(o): for a person to knowingly transfer any explosive materials, knowing or having reasonable cause to believe that such explosive materials will be used to commit a crime of violence, one of which is a violation of Title 18, United States Code, Section 245(b)(2)(C), specifically, by force or threat of force attempting to injure, intimidate or interfere with any person because of his race, color, religion or national origin and because he is or enjoying employment. [It is a violation of 18 U.S.C. § 245(b) for whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with-- (2) any person because of his race, color, religion or national origin and because he is or has been (C) applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency.[2]]

- Title 18, United States Code, Section 842(p)(2)(B): to teach or demonstrate to any person the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means, information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, knowing that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence, one of which is a violation of Title 18, United States Code, Section 245(b)(2)(C), as outlined above.

- 26 United States Code, Section 5861(d): to knowingly possess a firearm [a destructive device] which was not registered to him in the National Firearms Registration and Transfer Record.

- 26 United States Code, Section 5861(e) to knowingly and unlawfully transfer a firearm [a destructive device] in violation of the provisions set forth therein.

---

[2] A violation of Title 18, United States Code, Section 245 is a crime of violence as defined by Title 18, United States Code, Section 924(c)(2). *United States v. Nelson*, 68 F.3d 583, 586 (2nd Cir. 1995); *United States v. Furrow*, 125 F.Supp.2d 1178 (C.D. Cal. 2000).

- 26 United States Code, Section 5861(f) to knowingly make a firearm [a destructive device] in violation of the provisions set forth therein.

Special Agent Lorin G. Coppock
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to and subscribed before me
This 17th day of May, 2005

Susan K. Lee
United States Magistrate Judge